FORYAN, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. FIREMEN'S FUND INSURANCE COMPANY, Defendant and Appellant: SCHLITT and another, Defendants.

*March 1—March 30, 1965.*

For the appellant there were briefs by *Moen, Sheehan & Meyer* and *L. E. Sheehan,* all of La Crosse, and oral argument by *L. E. Sheehan.*

For the respondents there was a brief by *Thomas M. Anich* of Ashland, attorney, and *Roy T. Traynor* of Medford of counsel, and oral argument by *Mr. Anich.*

BEILFUSS, J. The pertinent policy provisions are as follows:

"Part I—Liability

"Coverage A—Bodily Injury Liability:

"(Company agrees) to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. Bodily Injury . . . sustained by any person; arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile. . .

"Persons Insured: The following are insured under Part I: (b) with respect to a nonowned automobile: (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or a trailer, provided the actual use thereof is with the permission of the owner;

"Definition: Under Part I:

" 'Insured' means a person or organization described under 'persons insured';

" 'Relative' means a relative of the named insured who is a resident of the same household;

" 'Nonowned Automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative other than a temporary substitute automobile."

The defendant, Firemen's Fund Insurance Company, in support of its motion for summary judgment, filed affidavits of Edward Schlitt and Helene Schlitt in which they state that they had on previous occasions given Cheryl permission to use the car but had instructed her not to let others drive it; that prior to April 13, 1961, Cheryl had lost her driver's license; that they had forbidden her to drive thereafter and that her use of the car from April 13 to April 16, 1961, was not with their permission.

Prior to the time of the hearing on the motion, the whereabouts of Cheryl was unknown and no affidavits by her were submitted by either party.

In opposition to the affidavits filed on behalf of Firemen's Fund which deny the owner's permission to use the vehicle, the plaintiffs filed an affidavit by Bruce Gillman, an attorney-at-law. Mr. Gillman's affidavit states that shortly after the accident he was retained by Edward Schlitt, Helene Schlitt, and Cheryl to represent them in making claim for damages they sustained by virtue of the accident of April 16, 1961; that he, shortly after the accident, interviewed Edward Schlitt and Helene Schlitt with respect to whether Cheryl had permission to operate the automobile; and that:

". . . Helene and Edward Schlitt explicitly replied that Cheryl McCutcheon Schlitt [sic] had general permission to operate the family automobile while at home, and that she had express permission to use said automobile the day of the accident, which occurred on April 16, 1961; that at no time was affiant advised directly or indirectly as to any limitations being imposed upon Cheryl McCutcheon Schlitt's [sic] permission to use the automobile or to allow any of her friends to operate said automobile while in the company of their daughter, and that affiant to the present date has never been advised to the contrary."

The affidavit further alleges that he, Gillman, is presently cocounsel for the Schlitts in an action for their damages now pending in the circuit court for Milwaukee county; that the nature and place of his employment has changed; and that the action is now being prosecuted by cocounsel.

The question before us is whether the Gillman affidavit raises a question of fact as to the permission of Sandra Sabbath to drive the Schlitt car.[2]

In passing upon this question we reiterate our statements as they appear in *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 277, 103 N. W. (2d) 9:

---

[2] Other supporting affidavits have been filed by both parties but will not be discussed herein for the reason that they are not determinative of the limited issue stated above.

"The rule is well established in this state that when it is shown there is a substantial issue of fact, or when the evidence on a material issue is in conflict, or if the inferences to be drawn from credible evidence are doubtful and uncertain, the motion for summary judgment should be denied. Likewise, when there is credible evidence which under any reasonable view will either support or admit of an inference in support or in denial of a claim of either party, it is for the jury to draw the proper inference and not for the court to determine which of two or more permissible inferences should prevail. *Elder v. Sage* (1950), 257 Wis. 214, 42 N. W. (2d) 919. We have often said that the power of the courts under the summary-judgment statute (sec. 270.635, 33 W. S. A., p. 309) is drastic and should be exercised only when it is plain there is no substantial issue of fact or of permissible inference from undisputed facts to be tried. *De Bonville v. Travelers Ins. Co.* (1959), 7 Wis. (2d) 255, 96 N. W. (2d) 509, 97 N. W. (2d) 392; *Ondrejka v. Ondrejka* (1958), 4 Wis. (2d) 277, 90 N. W. (2d) 615; *Braun v. Jewett* (1957), 1 Wis. (2d) 531, 85 N. W. (2d) 364; *Undovc v. Ross* (1954), 267 Wis. 182, 64 N. W. (2d) 747, 66 N. W. (2d) 200."

And at page 280:

"Summary-judgment procedure is not to be a trial on affidavits and adverse examinations. It is aimed at a sham answer which is interposed to secure delay. *Stafford v. General Supply Co.* (1958), 5 Wis. (2d) 137, 92 N. W. (2d) 267. The plaintiff should not be foreclosed from proving his cause of action. It is not the duty of one opposing summary judgment to prove his case or to put in all his evidence on summary judgment. He defeats the motion if he shows by affidavit or other proof that there are issues of fact or reasonable inferences which can be drawn from the evidence. *Parish v. Awschu Properties, Inc.* (1945), 247 Wis. 166, 19 N. W. (2d) 276; *Pelon v. Becco* (1948), 253 Wis. 278, 34 N. W. (2d) 236. The court does not try the issues but decides on summary judgment whether there is an issue of fact to be tried. *Bryan v. Noble* (1958), 5 Wis. (2d) 48, 92 N. W. (2d) 226."

The question as to sufficiency of the Gillman affidavit is twofold : First, is the affiant competent to testify; and second, does the affidavit state facts sufficient to warrant a trial on the question of permission.

The affidavit alleges an attorney-client relationship between Gillman and the Schlitts, and the substance of a conversation made during the course of such relationship. Can the attorney, by affidavit, divulge the substance of that conversation ?

Sec. 325.22, Stats., provides as follows :

"COMMUNICATIONS TO ATTORNEYS. An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. This prohibition may be waived by the client, and does not include communications which the attorney needs to divulge for his own protection, or the protection of those with whom he deals, or which were made to him for the express purpose of being communicated to another, or being made public."

Gillman does not stand in an attorney-client relationship to the plaintiffs, the defendant Firemen's Fund, nor its assureds Michael Sabbath and Sandra Sabbath, and owes them no duty of statutory confidence. His clients, Cheryl Schlitt and Helene Schlitt, are not parties to the action. Edward Schlitt, as characterized by Firemen's counsel, is only a "nominal party."

The statute quoted above provides the "prohibition may be waived by the client, and does not include communications . . . which were made to him for the express purpose of being communicated to another, or being made public." It does not appear that the disclosures made by Gillman in his affidavit are antagonistic to the purpose for which he was employed—on the contrary it is probable they were made to be communicated to others, or made public for a successful prosecution of any claims they might have. If Gillman's af-

fidavit violates the privileged-communications statute (sec. 325.22, *supra*), or any legal ethical standards,[3] and upon the record before us we do not characterize it as such, the persons to whom the privilege is extended, the Schlitts, may independently pursue the remedy provided.

The affidavit of C. Wosick, a claims representative of Firemen's Fund, filed in support of its motion for summary judgment, states he attempted to get Gillman to divulge the information as to permission. Firemen's Fund is not now in a position to say Gillman's action was improper.

At this stage of the proceedings, as the record now stands, it appears that Gillman can be called as a competent witness.[4]

The Schlitt affidavits, in their bare essentials, state that Cheryl did not have permission to use the car at the time in question, and that she was never permitted to allow others to drive. Gillman's affidavit states the Schlitts told him Cheryl had express permission to use the car at the time in question and that he was not advised of any limitation imposed upon Cheryl to allow others to drive.

In the event the Schlitts are called at the trial and testify on direct or cross-examination pursuant to their affidavits, the plaintiffs should be allowed to challenge their testimony by showing a prior inconsistent statement. A prior inconsistent statement, if otherwise admissible, is a recognized exception to the hearsay rule and goes to credibility of the witness and the weight of the testimony as an aid to the trier of the fact.

The plaintiffs should not be required to prove their case by affidavits to defeat a motion for summary judgment, nor should the court speculate as to what the trial evidence may

---

[3] Canon 37, Canons of Professional Ethics.

[4] Firemen's Fund cites *Forbus v. La Crosse* (1963), 21 Wis. (2d) 171, 124 N. W. (2d) 66, as authority for disregarding the Gillman affidavit. *Forbus* must be distinguished on its facts and does not control herein.

be. The plaintiffs defeat the motion if they show by affidavit or other proof that there are material issues of fact or reasonable inferences therefrom that are in dispute.

We conclude that there is a disputed issue of fact as to permission to drive the Schlitt automobile and the trial court correctly denied the motion for summary judgment.

Counsel for the parties set forth rules of express and implied permission in their briefs and oral arguments. The arguments and citations presented apply to the statutory omnibus-coverage policy provisions as required by sec. 204.-30 (3), Stats.

The omnibus insurance protection required by sec. 204.30 (3), Stats., follows the *vehicle* insured. The extended or additional insurance afforded by the family coverage of the use of nonowned automobiles, permitted but not required by statute,[5] follows the *driver* insured.

Omnibus coverage insurance (wherein the *car* rather than the *driver* is covered) is, in part at least, for the benefit of the injured party, *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 84 N. W. (2d) 84; the purpose thereof is to increase, rather than restrict, coverage, *Groth v. Farmers Mut. Automobile Ins. Co.* (1963), 21 Wis. (2d) 655, 124 N. W. (2d) 606; and, this court is committed to a broad or liberal construction of "permission" as used in the omnibus clauses, required to be included in automobile liability policies. Sec. 204.30 (3), Stats. *Krebsbach v. Miller* (1963), 22 Wis. (2d) 171, 125 N. W. (2d) 408.

---

[5] "344.33 'MOTOR VEHICLE LIABILITY POLICY' DEFINED. (7) *Excess or Additional Coverage.* Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage is not subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' applies only to that part of the coverage which is required by this section."

Counsel for the parties have not attempted to discuss the difference in the concept of implied permission, if there be one, between the required omnibus policy provision and permissible extended family coverage while operating nonowned vehicles. Query—is implied permission to be viewed from the point of view of the driver of the car or the owner? We regret that this case will be sent back for trial without more explicit guidelines as to the question of implied permission as it applies to family coverage of nonowned automobiles, but we deem it desirable to do so for the reason that this issue has not been specifically raised nor presented on the appeal before us.

*By the Court.*—Order affirmed.